# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### EUGENE DIVISION

JUDY L. DAVIS,

        Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

Civ. No. 6:16-cv-01465-CL

OPINION & ORDER

MARK D. CLARKE, Magistrate Judge.

Plaintiff Judy L. Davis seeks judicial review under 42 U.S.C. § 405(g) of the final

decision of the Commissioner of the Social Security Administration denying her application for

Disability Insurance Benefits pursuant to the Social Security Act. For the reasons below, the

Commissioner's decision is REVERSED and REMANDED for immediate award of benefits.[1]

## BACKGROUND

Plaintiff was born November 1, 1954, and is currently 62 years old. Tr. 135. Plaintiff is

married, has an eleventh-grade education, and previously worked as a cook. Tr. 32, 33, 136.

In February 2013, Plaintiff filed for a period of disability and disability benefits; she

alleged disability onset as of March 1, 2008. Tr. 135-38. In October 2014, Plaintiff had a hearing

before an administrative law judge ("ALJ"). Tr. 23-73. At the end of the hearing, and after

---

[1]The parties have consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. §
636(c)(1).

conferring with her attorney, Plaintiff amended the alleged onset date to July 1, 2013, which was accepted by the ALJ. Tr. 72.

On November 27, 2013, Plaintiff's daughter brought Plaintiff to Samaritan Albany General Hospital in Albany, Oregon; her daughter had found Plaintiff "nearly unresponsive, lying in vomit in bed." Tr. 16, 521. Dr. Stephanie Emery, M.D., the treating physician, admitted Plaintiff into the intensive care unit, and Plaintiff remained in the hospital for a month. Tr. 520, 531. Dr. Emory diagnosed Plaintiff with a neck abscess and sepsis, which had been caused by a lice infection and/or spider bite; Dr. Emory described Plaintiff as being "acutely ill." Tr. 521, 527. Moreover, Dr. Emory's notes from the November 27 admission indicate Plaintiff was lethargic, responded unintelligibly, and "[h]er fine motor skills were lacking on the left bilateral lower extremities as she did not move on command." Tr. 16. She noted that Plaintiff's daughter pointed out that Plaintiff's left arm had not worked well for about two years and wondered whether her mother may have had "a stroke at some point." Tr. 521.

After observing Plaintiff for a month, on December 31, 2013, Dr. Emory determined that Plaintiff had suffered from a cardiovascular accident "6 month[s] ago."[2] Tr. 531. And, indeed, when Plaintiff was subsequently admitted to Albany General in May 2014 for a stroke, Dr. Emory stated Plaintiff was previously "hospitalized in November [2013] . . . due to neck abscess due to lice infection. Summer that year she had a [right side basal ganglia] [cardiovascular accident]" that led to "residual [left upper extremity/lower extremity] weakness." Tr. 237.

As stated, Plaintiff originally applied for disability in February 2013, prior to her month-long hospitalization and May 2014 stroke. At the time, Plaintiff alleged disability due to diabetes, heart problems, and high blood pressure. Tr. 13. Importantly, for matters of this case,

---

[2]As the Commissioner notes, a cardiovascular accident is "'an imprecise term for a cerebral stroke.'" Def.'s Brief, at 7 (quoting Stedman's Medical Dictionary, http://www.medilexicon.com/dictionary/446). The Court uses both terms interchangeably throughout the remainder of this Opinion and Order.

Plaintiff's Social Security insured status ended on September 30, 2013, her "date last insured." Tr. 11. Accordingly, to be eligible for disability benefits, Plaintiff must have established a disability on or before this date. 42 U.S.C. § 416(i)(3); 20 C.F.R. §§ 404.131, 404.315. At Plaintiff's October 2014 hearing, she argued she suffered a stroke in summer 2013, before her date last insured, an argument seemingly corroborated by Dr. Emory's above-mentioned treatment notes. Tr. 22. The ALJ, however, held that Plaintiff suffered her first stroke on November 27, 2013, the date she was first admitted into Albany General. Tr. 13. Hence, because Plaintiff's date last insured was September 30, 2013, the ALJ ruled that her stroke was "not a medically determinable impairment for the time period at issue," Tr. 13, a critical finding because the Social Security Administration's hired vocational expert testified that if Plaintiff had indeed suffered a stroke before her date last insured, "it would be fair to say that that would preclude her past work and preclude any jobs to which she might have transferable skills," a determination that would have resulted in a finding of disability. Tr. 66-70.

In finding that the stroke was not a medically determinable impairment, however, the ALJ concluded that the severe impairments he did find she suffered from—diabetes mellitus, hypertension, and obesity—did not preclude Plaintiff from being capable of performing her past relevant work as a cook; indeed, he found she could "perform a full range of work at all exertional levels." Tr. 13, 14, 17. Accordingly, on February 2, 2015, the ALJ determined Plaintiff was not disabled as defined by the Social Security Act.[3] On May 24, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's denial the Commissioner's final decision. Tr. 1. This timely appeal followed.

/ / /

---

[3] Plaintiff's claim had been initially denied on May 8, 2013, and upon reconsideration on August 30, 2013. Tr. 11.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

a. The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

/ / /

## THE ALJ'S FINDINGS

Applying the five-step analysis, the ALJ found:

1. Plaintiff did not engage in substantial gainful activity during the period from her amended alleged onset date of July 1, 2013, through her date last insured, September 30, 2013. (20 CFR § 404.1571 *et seq.*). Tr. 13.

2. Plaintiff has the following severe medically determinable impairments: diabetes mellitus, hypertension, and obesity. (20 CFR § 404.1520(c)). Tr. 13.

3. Plaintiff does not have an impairment or a combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 CFR Pt. 404, Subpt. P, App. 1. (20 CFR §§ 404.1520(d), 404.1525 & 404.1526). Tr. 14.

   a. Plaintiff has the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: she should have no exposure to hazards such as machinery, moving mechanical parts, and unprotected heights. Tr. 14.

4. Plaintiff is capable of performing past relevant work as a cook. (20 CFR § 404.1565). Tr. 17.

Consequently, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. Tr. 18.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r. Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence'" means "'more than a mere scintilla but less than a preponderance,'" or more clearly stated, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court

must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Where the evidence before the ALJ is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r. Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

/ / /

/ / /

## DISCUSSION

Plaintiff argues the ALJ erred by (1) failing to assign weight to Dr. Emery's opinion that Plaintiff suffered from a stroke in summer 2013; (2) analyzing the evidence at step two of the sequential analysis improperly by failing to consider Plaintiff's impairments resulting from her first stroke; and (3) improperly affording little weight to Plaintiff's husband's testimony.

## SUMMARY

The ALJ held the medical evidence found in the record indicated Plaintiff was discharged from Albany General in December 2013, and her diagnoses "was a staph infection with sepsis with colitis and post cardiovascular cognitive impairment." Tr. 16. He noted that while "her treatment records indicated that she had a history of a [cardiovascular accident] about six months prior, this is history only, and there are no medical records confirming such incident." Tr. 16. Accordingly, the ALJ did not give these treatment records, logged by Dr. Emory, any weight. Tr. 16-17. As discussed below, this was error. Additionally, the ALJ erred at step two of the sequential analysis because he improperly failed to consider Plaintiff's impairments resulting from her first stroke. Finally, the ALJ improperly rejected Plaintiff's husband's testimony. The ALJ's decision is therefore vacated, and the case is remanded for immediate award of benefits.

## I.    The ALJ failed to provide specific and legitimate reasons to discount Dr. Emory's opinion that Plaintiff suffered from a stroke in summer 2013.

As stated, the ALJ determined that while Plaintiff's "treatment records" did indeed indicate a cardiovascular accident about six months prior, "this is history only, and there are no medical records confirming such incident." Tr. 16. The treatment records, which were completed by Dr. Emory, Plaintiff's treating physician, were therefore given no weight in the ALJ's analysis. For the reasons below, the Court finds this to be erroneous.

An ALJ may properly reject a treating or examining physician's uncontradicted medical opinion only for "'clear and convincing' reasons." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). When the treating or examining physician's opinion has been contradicted, however, it may be rejected for "'specific and legitimate reasons that are supported by substantial evidence in the record.'" *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting *Lester*, 81 F.3d at 830-31). This can be done by setting out a detailed and thorough summary of the facts, providing an appropriate interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). An ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Here, the ALJ found Plaintiff suffered from a stroke on November 27, 2013, the very day she was admitted to Albany General. Tr. 13. Because the stroke occurred in November, the ALJ further held that her stroke was "not a medically determinable impairment" because her date last insured was September 30, 2013. Tr. 13. There is absolutely no evidence in the record to indicate Plaintiff suffered a stroke on November 27, 2013; instead, the uncontroverted medical evidence plainly demonstrates that Plaintiff was admitted to Albany General with a neck abscess and sepsis resulting from a lice infection and/or a spider bite.

First, as Dr. Emory stated on November 27, 2013, I "am admitting the patient for inpatient ICU services for treatment of sepsis." Tr. 527. Two weeks later, Dr. Emory again noted Plaintiff "was admitted 2 weeks ago with a neck abscess and sepsis," and, in fact, a CT scan of Plaintiff's head analyzed by Dr. Frederic Bahnson, M.D., revealed "no new [cardiovascular accident]." Tr. 527. Finally, in her discharge diagnosis, Dr. Emory stated Plaintiff "was admitted

[and] treated for staph bacteremia and neck abscess." Tr. 531. Hence, there is nothing that would even remotely suggest Plaintiff suffered a stroke on November 27, 2013. Nevertheless, the ALJ determined, seemingly on his own volition, that Plaintiff's stroke occurred on this date, after her date last insured. Tellingly, the ALJ fails to cite to anything in the record that suggests this was the case.

Moreover, Dr. Emory's notes indicate Plaintiff suffered a stroke six months prior to her December 2013 discharge. In her discharge diagnosis on December 31, 2013, Dr. Emory determined that Plaintiff had suffered from a cardiovascular accident, or stroke, "6 month[s] ago." Tr. 531. And when Plaintiff was subsequently admitted to Albany General in May 2014 for a second stroke, Dr. Emory again stated Plaintiff was previously "hospitalized in November [2013] . . . due to neck abscess due to lice infection. *Summer that year* she had a [right side basal ganglia] [cardiovascular accident]" that led to "residual [left upper extremity/lower extremity] weakness." Tr. 237 (emphasis added). Hence, the only medical evidence documented on or about November 27, 2013, the date the ALJ found Plaintiff suffered her first stroke, indicates the stroke occurred during the summer of that year. Yet the ALJ ignores this evidence, stating "this is by history only." Tr. 16. But as discussed, an ALJ is entitled to reject the uncontradicted medical opinion of a treating physician such as Dr. Emory only for "'clear and convincing' reasons." *Lester*, 81 F.3d at 830 (9th Cir. 1995) (quoting *Baxter*, 923 F.2d at 1396). And even when the treating physician's opinion has been contradicted, it may only be rejected for "'specific and legitimate reasons that are supported by substantial evidence in the record.'" *Carmickle*, 533 F.3d at 1164 (quoting *Lester*, 81 F.3d at 830-31).

In an attempt to meet this burden, and in arguing Dr. Emory's opinion should be given no weight, the ALJ cited to (1) state agency medical evaluator Llyod Wiggins's, M.D, findings; (2)

Page 10 – OPINION & ORDER

Plaintiff's March 2013 function report; (3) Plaintiff's uncontested lack of credibility; (4) and a handwritten report from a clinician at a free health care clinic in Albany in June 2013. The Court addresses each in turn.

## A. Dr. Wiggins

First, in rejecting Dr. Emory's medical opinion that Plaintiff suffered from a stroke, or cardiovascular accident, in the summer of 2013, the ALJ pointed to state agency medical evaluator Dr. Wiggins. Tr. 17. Dr. Wiggins reviewed Plaintiff's medical record in late August 2013 and stated Plaintiff "had no limitations other than avoiding moderate exposure to hazards (such as machinery, heights, etc.)." Tr. 17. The ALJ gave Dr. Wiggins's report "great weight," arguing he reviewed the "longitudinal medical evidence of record." Tr. 17. In August 2013, however, Plaintiff had not yet been admitted to Albany General, nor had she been treated by Dr. Emory. Accordingly, Dr. Wiggins's "review" of Plaintiff's "longitudinal medical evidence of record" did not include Plaintiff's treating physician's opinion that she suffered from a stroke in summer 2013. Had Dr. Wiggins been privy to this information, his evaluation of Plaintiff's medical history may very well have been in line with Dr. Emory's.

"The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester*, 81 F.3d at 831 (internal citations omitted) (emphasis in original). This is especially true where, as here, the nonexamining physician did not even have access to the treating physician's opinion when making his findings. Hence, Dr. Wiggins's opinion does not justify the rejection of Dr. Emory's opinion.

/ / /

/ / /

## B. March 2013 function report

Second, the ALJ found that Plaintiff's alleged symptoms "prior to the date last insured are not consistent with her daily activities. In her function report from March 2013, she reported she made breakfast and full meals for her husband, did dishes and laundry and watched television. She also indicated she spent time planting flowers and pulling weeds." Tr. 16. The Court fails to see how this function report is relevant in any way. Plaintiff's amended onset date is July 1, 2013. Tr. 72. Dr. Emory's opinion was that Plaintiff suffered from a cardiovascular accident six months prior to December 31, 2013—sometime in the summer of 2013. Accordingly, a March 2013 function report is entirely irrelevant and certainly does not constitute substantial evidence worthy of rejecting Dr. Emory's medical opinion.

## C. Plaintiff's lack of credibility

Third, Plaintiff's "uncontested lack of credibility," Def.'s Brief, at 10, was not a sufficient reason to reject Dr. Emory's medical opinion. The ALJ noted Plaintiff testified she had a stroke in summer 2013. Tr. 14. She also testified "she could not move her hands a certain way." Tr. 14. Seeming to contradict this testimony, however, at least according to the ALJ, Plaintiff also "stated she was still able to play cards such as Gin Rummy"; "was still able to walk after the incident in the summer of 2013, but she tired easily"; "still went to the grocery store after that time, but [] her husband did all the grocery shopping"; and "stood and did dishes for 20 minutes in the summer of 2013." Tr. 14.

This is not substantial evidence justifying the ALJ's decision to reject Dr. Emory's medical opinion. Simply because Plaintiff stated she had a stroke in summer 2013 and the ALJ does not find her testimony credible is not, alone, a reason to reject Dr. Emory's finding. While "[a] physician's opinion of disability 'premised to a large extent upon the claimant's own

Page 12 – OPINION & ORDER

accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted,'" *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citing *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)), Dr. Emory's opinion that Plaintiff suffered from a cardiovascular accident six months prior to her stay at Albany General was based, not on Plaintiff's subjective complaints, but on Dr. Emory's own objective findings, made after evaluating and treating Plaintiff for a month. For instance, she noted during Plaintiff's November 27 admission that Plaintiff was lethargic, responded unintelligibly, and "[h]er fine motor skills were lacking on the left bilateral lower extremities as she did not move on command," symptoms consistent with a stroke. Tr. 16. Similarly, Dr. Emory later observed that Plaintiff experienced residual left hemiparesis during her stay, Tr. 531, consistent with Dr. Emory's later finding that Plaintiff suffered a cardiovascular accident in summer 2013 that led to "residual [left upper extremity/lower extremity] weakness." Tr. 237. Indeed, there is nothing in Dr. Emory's medical notes to indicate her findings were based on Plaintiff's subjective complaints, or, for that matter, that Plaintiff ever informed Dr. Emory that she thought she may have had a stroke six months prior to her hospitalization.

## D. Handwritten health care provider report

Fourth, the Court finds nothing in the handwritten report that contradicts Dr. Emory's opinion. Plaintiff's husband, Dean Davis, testified that Plaintiff was suffering from significant health problems in summer 2013; he stated he routinely had to help her in and out of bed, in and out of chairs, and "[s]ometimes she couldn't even make it to the bathroom without doing it on the floor." Tr. 60. The couple, however, did not have medical insurance at the time, so Mr. Davis took Plaintiff to a free health care clinic. Tr. 60-61. The handwritten report from the health care provider, who is not identified, states that Plaintiff's blood pressure was high; that she was taking

a prescription drug, Metoprolol; and that she should avoid candy and focus on vegetables and low-glycemic fruits.[4] Tr. 510. The report also provides lab work, which, as the ALJ points out, "reflect[s] uncontrolled diabetes." Tr. 16.

The ALJ fails to set out in any type of detail how this report contradicts Dr. Emory's. Presumably, because the report does not "record [] a 'mini stroke' in the summer of 2013," Tr. 16, the ALJ finds the handwritten report at odds with Dr. Emory's. But even if this were true, a dubious assumption given the report does nothing to rule out a stroke, this brief and conclusory handwritten report is hardly the type of substantial evidence worthy of discrediting a treating physician's opinion. The Commissioner is to consider specific factors in determining the weight to be given to a treating physician's opinion; one of those factors is "the length of the treatment relationship and the frequency of examination by the treating physician." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (internal quotations and citations omitted). Here, Dr. Emory's treatment relationship consisted of a month-long hospital stay where Dr. Emory had access and the ability to observe Plaintiff's symptoms every day. By contrast, this unnamed health care provider treated Plaintiff once, and there is nothing to suggest the provider had any prior treatment relationship with Plaintiff. Accordingly, the handwritten report is not substantial evidence.

### E. Whether Dr. Emory's treatment notes are considered medical opinions

Finally, in a last-ditch effort to justify the ALJ's findings, the Commissioner argues Dr. Emory's "treatment notes" were not medical opinions and thus are not entitled to the type of weight ordinarily afforded to a treating physician's opinions. First, in putting forth this argument, the Commissioner points to 20 C.F.R. § 404.1527(a)(1), which states that "[m]edical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis,

---

[4]The remainder of the report is either irrelevant or entirely illegible. Tr. 511-13.

what [she] can still do despite impairment(s), and [her] physical or mental restrictions." The plain language of this regulation demonstrates that Dr. Emory's treatment notes, which contain statements reflecting her judgments about Plaintiff's symptoms after observing Plaintiff and treating her daily for a month, are medical opinions. Nevertheless, the Commissioner seems to believe the notes are not worthy of being credited as medical opinions because they detail medical events that took place before Dr. Emory treated Plaintiff. It is "possible," however, "based on the medical evidence," for a treating physician "to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination." *Armstrong v. Comm'r Soc. Sec. Admin.*, 160 F.3d 587, 589 (9th Cir. 1998).

The Commissioner argues, however, that the "'history' that appeared in Plaintiff's medical records was provided by Plaintiff and her family." Def. Brief, at 14. There is nothing in the record to support this argument. Dr. Emory's relevant treatment notes state, at the time of Plaintiff's admission, that Plaintiff was lethargic, responded unintelligibly, and "[h]er fine motor skills were lacking on the left bilateral lower extremities as she did not move on command," Tr. 16, objectively observed symptoms consistent with a cardiovascular accident. Next, after observing Plaintiff for a month, on December 31, 2013, Dr. Emory determined that Plaintiff had suffered from a cardiovascular accident "6 month[s] ago." Tr. 531. Last, when Plaintiff was subsequently admitted to Albany General in May 2014 for a second stroke, Dr. Emory stated Plaintiff was previously "hospitalized in November [2013] . . . due to neck abscess due to lice infection. Summer that year she had a [right side basal ganglia] [cardiovascular accident]" that led to "residual [left upper extremity/lower extremity] weakness." Tr. 237. Nothing in these notes indicates in any way that these statements were derived from anything but Dr. Emory's own observations and judgments. Dr. Emory did note, on the day of Plaintiff's admission, that

Plaintiff's daughter wondered whether her mother may have had "a stroke at some point," Tr. 521, but, again, the record is replete of evidence showing Dr. Emory's medical opinions were gleaned from this statement alone and not from her month-long treatment of Plaintiff, whereby she observed, for instance, that Plaintiff experienced residual left hemiparesis, consistent with a cardiovascular accident that, as Dr. Emory stated, led to "residual [left upper extremity/lower extremity] weakness." Tr. 237, 531. Hence, Dr. Emory's "treatment notes" were medical opinions, and as the treating physician, her opinion that Plaintiff suffered from a stroke in the summer of 2013 was entitled to be rejected only upon a showing of substantial evidence to the contrary.[5] As demonstrated, no such evidence exists. Accordingly, the ALJ erred in rejecting Dr. Emory's medical opinion.

## II.   The ALJ erred in step two of the sequential analysis by failing to consider the impairments she suffered after enduring her first stroke

Plaintiff contends the ALJ erred by failing to consider the residual impairments she suffered from her summer 2013 cardiovascular accident at step two of the sequential analysis. At step two of the five-step analysis, "the ALJ assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limits his ability to do basic work activities." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (internal citations omitted). Here, the ALJ determined that Plaintiff suffered from diabetes mellitus, hypertension, and obesity; that these "medically determinable impairments [were] supported by the medical evidence of record"; and that they were "severe because they pose[d] more than a minimal limitation on [Plaintiff's] ability to perform basic work activities." Tr. 13. Importantly, the ALJ found that Plaintiff's first stroke was "not a medically determinable impairment for the time

<hr/>

[5]The Court notes it does not appear Dr. Emory's opinion that Plaintiff suffered from a stroke in the summer of 2013 is controverted by other medical evidence; however, for the sake of argument, it assumes such evidence existed and that the ALJ only needed to provide specific and legitimate reasons, supported by substantial evidence in the record, to reject her opinion.

period at issue" because she suffered the stroke on November 27, 2013, after her date last insured. Tr. 13.

The ALJ's finding is not supported by the evidence. As discussed, the record contains no evidence to indicate Plaintiff suffered a stroke on November 27, 2013. Rather, the medical evidence provided by Dr. Emory, Plaintiff's treating physician, plainly demonstrates Plaintiff was admitted to Albany General with a neck abscess and sepsis resulting from a lice infection and/or a spider bite on November 27, 2013, not a stroke, and that Plaintiff had in fact suffered from a stroke in the summer of 2013. *See*, *e.g.*, Tr. 237, 531.

In assessing the severity of a claimant's impairment, "an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal quotations and citations omitted). In this case, the ALJ entirely disregarded the medical records provided by Dr. Emory. As detailed in Section I, the ALJ's decision to disregard this evidence was improper. As a result, the ALJ failed to consider all relevant evidence in the record in assessing the severity of Plaintiff's alleged impairment. And while there may be cases in which the failure to consider relevant evidence in assessing the severity of a claimant's impairment is harmless, *Robbins*, 466 F.3d at 885, the error here was not harmless.

The Ninth Circuit has "only found harmless error when it [is] clear from the record that an ALJ's error was inconsequential to the ultimate nondisability determination." *Robbins*, 466 F.3d at 885 (internal quotations and citations omitted). Here, the fact that the medically determinable limitations of Plaintiff's stroke, or cardiovascular accident, were excluded meant they were not considered in the ALJ's RFC analysis, an analysis which found Plaintiff could

perform a full range of work at all exertional levels and that Plaintiff was capable of performing past relevant work as a cook. The ALJ's factually unsupported finding that Plaintiff's stroke occurred after her date last insured, and thus was not a medically determinable impairment for the time period at issue, was critical to this RFC finding; indeed, the Social Security Administration's hired vocational expert testified that if Plaintiff had in fact suffered a stroke before her date last insured, as Dr. Emory's medical opinion indicated, "it would be fair to say that that would preclude her past work and preclude any jobs to which she might have transferable skills," Tr. 66-70, a determination that differs markedly from the ALJ's RFC analysis, and one that would have resulted in a finding of disability, as Plaintiff would have been unable to engage in past relevant work or any other type of substantial gainful employment in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv); 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). Consequently, as explained, the ALJ failed to consider Dr. Emory's medical opinion that Plaintiff suffered a stroke in summer 2013 as part of his step-two analysis, and this error was far from harmless.

### III.    The ALJ improperly discredited Plaintiff's husband's testimony

Last, Plaintiff argues the ALJ erroneously discredited Plaintiff's husband's lay witness testimony. Plaintiff's husband, Mr. Davis, testified that, based on his observations, he believed Plaintiff had a stroke sometime in the summer of 2013. Tr. 59. He stated that around that time Plaintiff "wasn't cooking as much, she wasn't doing anything, and I had to help her more . . . she just completely stopped all that and she just wasn't doing anything . . . she just sat in her chair and that was it." Tr. 59. Additionally, he stated he had to help her in and out of bed, in and out of chairs, and, perhaps most strikingly, she "sometimes . . . couldn't even make it to the bathroom without doing it on the floor." Tr. 60.

The ALJ discredited Mr. Davis's testimony. According to the ALJ, "Mr. Davis' statements are given little weight because he is not an acceptable medical source and there is no corroborating evidence from the time period at issue to support debilitating limitations prior to the date last insured." Tr. 17.

"Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (internal citations omitted). Lay witness testimony cannot be discounted without providing germane reasons for doing so. *Id.* Here, the ALJ failed to provide germane reasons for discounting Mr. Davis's testimony. As explained, the ALJ's first stated reason for rejecting Mr. Davis's testimony was that he was not an acceptable medical source. An ALJ may not reject or discredit lay testimony simply because they are not an acceptable medical source; "friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition." *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) (internal citations omitted). Hence, this reason was not germane.

Next, in support of his assertion that the evidence does not corroborate Mr. Davis's testimony, the ALJ points to Dr. Wiggins's review of Plaintiff's medical record, which the ALJ describes as "longitudinal." Tr. 17. The ALJ notes that Dr. Wiggins's review made no mention of the debilitating limitations Mr. Davis described of in his testimony. As previously pointed out, however, Dr. Wiggins reviewed Plaintiff's "longitudinal" medical record in August 2013, before Plaintiff had been admitted to Albany General and before she had been treated by Dr. Emory. Accordingly, Dr. Wiggins's "review" of Plaintiff's "longitudinal medical evidence of record" did not include Plaintiff's treating physician's opinion that she suffered from a stroke in summer

2013. It hardly seems a stretch to say that if Dr. Wiggins had access to this critically important piece of information, his evaluation of Plaintiff's medical history may very well have been in line with Mr. Davis's testimony. Moreover, aside from the cursory, handwritten report provided by the free health care clinic Plaintiff visited in summer 2013, it is not clear what medical evidence existed from summer 2013 and thus what Dr. Wiggins reviewed that would have made him a reliable authority on Plaintiff's behavior during the time period Mr. Davis testified about. But all of this aside, the ALJ's "rejection of the testimony of [Mr. Davis] because [Plaintiff's] medical records d[o] not corroborate her [symptoms] violates SSR 88-13, which directs the ALJ to consider the testimony of lay witnesses where the claimant's alleged symptoms are *unsupported* by her medical records." *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996) (citing SSR 88-13) (emphasis in original). Accordingly, the ALJ's second proffered reason for rejecting Mr. Davis's testimony, like the first, is not germane. Having failed to provide germane reasons for rejecting Mr. Davis's testimony, the ALJ's decision to do so was erroneous.

## REMAND

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)). Generally, when a court reverses an administrative decision, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (quoting *INS v. Ventura*, 537 U.S. 12, 16 (2002)). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989); *Smolen*, 80 F.3d at 1292.

On this record, the Court believes no useful purpose would be served by remanding the case for further proceedings. In this case, "the record has been fully developed and there is not sufficient evidence to support the ALJ's conclusion." *Bowen*, 867 F.2d at 763 (citing *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1985)). The Court is properly convinced that the ALJ failed to provide substantial evidence to support his decision rejecting Dr. Emory's largely uncontradicted medical opinion. Moreover, despite the Commissioner's arguments to the contrary, the record is fully developed and no meaningful purpose would be served by remanding for additional proceedings. Indeed, as the Commissioner's own vocational expert testified, accepting as true Dr. Emory's medical opinion that Plaintiff suffered a stroke in the summer of 2013, "it would be fair to say that that would preclude her past work and preclude any jobs to which she might have transferable skills." Tr. 66-70. A claimant who is unable to perform past relevant work as well as any other work that exists in significant numbers in the national economy, after taking into account the claimant's RFC and age, education, and work experience, is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv); 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). Plaintiff meets these criteria, is therefore disabled, and remanding this case for further administrative proceedings would serve no useful purpose; "rather, it would merely delay the award of benefits." *Bowen*, 876 F.3d at 763. Thus, the Commissioner's decision is reversed and remanded for the payment of benefits.

/ / /

/ / /

/ / /

/ / /

/ / /

**ORDER**

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), the decision

of the Commissioner is REVERSED and the matter is REMANDED for immediate payment of

benefits.

IT IS SO ORDERED.

DATED this _11_ day of April, 2017.

MARK D. CLARKE
United States Magistrate Judge